IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TAMMY LEWIS,<br>　　　　Plaintiff<br><br>v.<br><br><br>LIBERTY LIFE ASSURANCE<br>COMPANY OF BOSTON,<br>　　　　Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br>CIVIL ACTION NO.<br>5:19-cv-1082 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Liberty Life Assurance Company of Boston wrongfully terminated long-term disability benefits owed to Tammy Lewis.

### I. PARTIES

1.　Plaintiff Tammy Lewis is a resident of San Antonio, Bexar County, Texas.

2.　Defendant Liberty is an insurance company licensed to do business in Texas and can be served with citation by serving its agent for service of legal process Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

### II. JURISDICTION AND VENUE

3.　This lawsuit is a claim for disability benefits provided by an ERISA welfare benefit plan brought under 29 U.S.C. §1132(a)(1)(B). This court has

1

jurisdiction over this claim for disability benefits under 29 U.S.C. §1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Venue is proper in the Western District of Texas, San Antonio Division, in accordance with 29 U.S.C. 1132(e)(2) as the disability benefit payment obligations under the plan are to Lewis at her home in San Antonio, Texas.

### III. STATEMENT OF FACTS

4. Tammy Lewis worked as a Change Management Advisor I for USAA. Her job responsibilities are summarized by USAA as follows:

> "Plans, coordinates and develops change management plans and strategies for multiple mid-to large-sized projects and assists with communication documents for the implementation of business change management efforts to includes processes, programs, projects, policies and procedures. Under limited supervision performs moderately complex to complex work assignments and problem resolution.

5. In January 2014 Lewis underwent emergency brain surgery to remove a lesion on the frontal lobe of her brain that had caused a seizure. Her neurosurgeon Christopher Bogaev, M.D., described the surgery as a "left frontotemporal craniotomy with orbital osteotomy for resection of a giant cranial-based epidermoid." To her credit, Lewis attempted to return to work after surgery. However, cognitive impairment as a result of the surgery, along with the loss of her ability to regulate her emotions, also the result of her brain surgery, prevented her from continuing to perform her job responsibilities for USAA.

6. As of October 19, 2015, she ceased her efforts to return to work and submitted a claim for short-term disability (STD). Her claim was eventually

approved. Dr. Bogaev referred Lewis to Neuropsychologist Sean Connolly, Ph.D. for an extensive neuropsychological evaluation that was performed over three days in December 2015. Dr. Connolly determined that Lewis was significantly impaired by a Mild-to-Major Neurocognitive Disorder due to brain surgery for epidermoid tumor, and also that Lewis suffered from depressive disorder and generalized anxiety disorder.

  7. Lewis received STD benefits for 26 weeks, the maximum period. Since she couldn't return to work after the expiration of STD benefits, she was approved for long-term disability (LTD benefits). Long-term disability benefits are provided to USAA employees, including Lewis, through a group insurance policy underwritten and administered by Liberty Life Assurance Company of Boston.

  8. In the fall of 2016, Liberty referred Lewis to Kate Glywasky, Psy D, for an independent medical examination (IME). After performing the IME, Glywasky indicated that her cognitive impairment could not determined due to her "failing scores on several performance validity measures."

  9. However, Glywasky reported that "due to the size and location of the tumor, and parenchymal changes secondary to removal, emotional dysregulation would also be suspected, in the form of impulsivity and angry outbursts." Based upon the two days of evaluation that she conducted, along with prior medical and therapy records, Glywasky reported that Lewis's "problems with emotional regulation and judgment" was a functional impairment "secondary to the January 2014 tumor resection."

10. Liberty continued to pay Lewis LTD benefits in 2017.

11. In 2017, Lewis submitted a claim for disability income benefits with the Social Security Administration (SSA). On February 7, 2018, Lewis appeared before Social Security Administrative Law Judge Ilene B. Kramer. On February 23, 2018, Judge Kramer ruled that Lewis was entitled to Social Security disability benefits. The definition of disability for Social Security disability benefits, summarized, is that the claimant cannot perform substantial gainful activity (SGA) by reason of a medical determinable physical or mental impairment(s) which can be expected to result in death or which will last for at least 12 months.

12. Judge Kramer's decision explains why Lewis was awarded disability benefits. She states, in relevant part, as follows:

> "By 2017, claimant experienced worsening back pain and she ultimately had back-to-back spinal surgeries in March and April 2017. Despite surgeries she continued with pain and she maintained pain management. As recently as May 2017, imaging confirmed avascular necrosis of the bilateral hips………
> …………………….
> In October 2017, neurosurgeon Dr. Bogaev completed a questionnaire on behalf of the claimant. The doctor wrote that claimant experienced memory, attention, and cognitive impairments daily. The doctor wrote that claimant was unable to perform job duties due to such limitations.
>
> On October 19, 2017, psychologist Dr. Connolly completed a questionnaire on behalf of the claimant. Doctor Connolly wrote that claimant had slowed cognitive processing and marked memory deficits, among other difficulties. The doctor wrote that claimant would likely be off-task 25% or more during a workday. The doctor wrote that claimant was incapable of even low stress work.
>
> The undersigned considered the above mentioned medical source

> opinions from Dr. Bogaev and Dr. Connolly and the undersigned accords great weight to them collectively. The opinions are supported when considering that the clamant had documented neuropsychological findings following her cranial resection in 2014. In particular, the undersigned concurs that claimant would be unable to perform job duties due to her cognitive limitations and that she would be off-task and absent in the workplace, hence the inclusion of such limitations within the residual functional capacity. The undersigned credits claimant's testimony because she returned to work as soon as she could, attempted to work and attempted to address her limitations. These attempts lend credit to her testimony that her cognitive and interpersonal skills declined after the brain surgery…..

13. Lewis sent Judge Kramer's decision to Liberty in March, 2018.

14. In April 2018, Liberty requested that Lewis undergo another IME. On April 14, 2018, Lewis was examined by Kameel Karkar, M.D. (Psychiatry and Neurology). Dr. Karker could neither confirm that Lewis suffered from cognitive impairments, nor could he oppose the opinions of Dr. Connolly and Dr. Bogaev that Lewis suffered from cognitive impairment. As to her ability to regulate her emotions, Dr. Karker noted that "Lewis provided a history of avoidance of interaction with others, especially adults, due to her cognitive difficulties." "Assuming such social impairments exist," he noted, "possible contributing factors include cognitive deficits as well as mood factors."

15. Liberty notified Lewis in a letter dated July 27, 2018, that it was terminating LTD benefits as of July 31, 2018. Liberty asserted that Lewis failed to attend another neuropsychological evaluation in the summer of 2018 and therefore Liberty was terminating benefits under the 24-month mental and nervous

condition limitation (the policy limits LTD benefits to 24 months when a claimant's disability is due to a mental illness).

16. Lewis appealed. With her appeal she provided updated reports from Dr. Connolly and Dr. Bogaev. In explaining his diagnosis of major neurocognitive disorder due to brain surgery, Dr. Connolly explained that impairment due to frontal lobe trauma is difficult to measure with tests. In regards to his diagnosis of Tammy Lewis, he wrote as follows:

> "This clinician has been treating brain trauma for 40 years, and consistent self-report of daily struggles in life, are an important source of information in assessing the extent of the brain trauma. Ms. Lewis' reports over three years of neurocognitive struggles, managing people, doing paperwork, attentiveness to details, minimizing forgetfulness, handling finances, managing her self-support, and living her life adds plentiful data to support the clinical diagnosis. Her considerable distress and grief in losing the brain that she cherished throughout her life adds to the severity of the neurocognitive disorder."

17. Dr. Bogaev concurred that Lewis remained unable to work due to cognitive impairment as a result of the brain surgery he performed in 2014. Lewis also provided a lengthy explanation as to why she remained unable to work due to her neurocognitive disorder and hip pain from avascular necrosis and back and neck pain from herniated discs.

18. Liberty received Lewis' appeal on or about January 21, 2019. After receipt of Lewis' appeal, Liberty requested that Lewis undergo another IME. Liberty scheduled the IME on May 1, 2019 with Douglas Cooper, PhD, South

Texas Neurobehavioral Group. Lewis attended the IME. To date, Liberty has made no decision on Lewis' appeal.

19. Liberty has substantially exceeded the time limits set forth in the ERISA claims procedure regulations established by the Secretary of the U.S. Department of Labor, specifically 29 CFR §2560.503-1(i)(3), for deciding Lewis' disability appeal. Under these circumstances, Lewis' appeal is deemed denied and she is deemed to have exhausted her administrative remedies available under the Liberty group policy. She can therefore proceed with this benefits lawsuit. No deference is to be afforded the deemed denial. 29 CFR §2560.503-1(l)(2).

**Exhaustion of Appeal Requirements**

20. Since Liberty has not issued a timely decision on her appeal, Lewis is deemed to have exhausted her appeal rights as required by the policy and ERISA claims regulations.

**Liberty's Decision to Terminate Benefits Was Contrary to the Preponderance of the Evidence Or Was an Abuse of Discretion**

21. Since Liberty did not issue a timely decision on Lewis' appeal, the standard of review of Liberty's decision is de novo. Under a de novo standard, Liberty's decision to terminate Lewis' LTD benefits was contrary to the preponderance of the evidence. The greater weight of the evidence within the record indicates that Lewis remained disabled and remained entitled to LTD benefits under the policy.

22. In the alternative, even if there is language in the policy or plan-related documents that is interpreted to grant Liberty discretion and that discretion has not been deemed forfeited by Liberty's failure to timely decide Lewis' appeal, such discretionary language is unenforceable as to Lewis' claim because it is a violation of Texas law to seek enforcement of a discretionary clause in a disability policy against an insured living in Texas. Texas Insurance Code, §1701.062, and 28 Texas Administrative Code §§3.1201-3.1203. This anti-discretionary statute and its accompanying regulations are not preempted by ERISA.

23. Lewis' LTD benefits should have continued after July 31, 2018. The LTD plan entitles her to 60% of her pre-disability pay less applicable offsets. Social Security disability benefits are an applicable offset. Lewis earned approximately $6807.63 per month prior to her disability. Her gross LTD benefit is $4084.58 per month ($6807.63 x .6). Her base Social Security disability benefit was $1721.90 per month (cost of living increases awarded by the Social Security Administration are not an offset). As a result, her net monthly LTD benefit from Liberty after offset is $2362.68.

24. In the unlikely event that Liberty is found to have retained its discretionary authority so that this matter is reviewed under an abuse of discretion standard of review, Lewis is still entitled to continuing LTD benefits because Liberty abused its discretion in terminating her benefits.

25. Since Liberty's decision to terminate Lewis' LTD benefits resulted in Liberty saving money, as the carrier was both the decision-maker and the

underwriter of benefits, Liberty acted under a conflict of interest when it decided Lewis' claim and her appeal. If abuse of discretion is determined to be the proper standard of review, this conflict of interest should be considered as a factor by this Court in determining whether or not Liberty abused its discretion.

## IV. CAUSE OF ACTION UNDER ERISA

### Claim for Disability Benefits

26. Since Liberty wrongfully terminated her LTD benefits as of July 31, 2018, Lewis seeks to recover her disability benefits from August 1, 2018 to the present under the authority of 29 U.S.C. §1132(a)(1)(B) of ERISA.

## V. RELIEF REQUESTED

27. Lewis is entitled to LTD benefits in the amount of $2362.68. per month beginning August 1, 2018. As of December 1, 2019, Lewis is entitled to the sum of $37,802.88 in back benefits ($2760.43 x 16 months), less any overpayment that occurred as a result of a back award of Social Security disability benefits. Lewis requests these back benefits as well as additional monthly benefits that accrue after December 1, 2019 but during the pendency of this litigation at the rate of $2362.68 per month.

## VI. ATTORNEY'S FEES

28. Lewis requests her attorney's fees and costs under 29 U.S.C.A. 1132(g).

**CONCLUSION**

Wherefore, premises considered, Lewis requests back benefits in the amount of $37,802.88, less any overpayment that occurred, plus monthly disability benefits that accrue after December 1, 2019 but while this case is pending at the rate of $2362.68 per month. She also requests her attorney's fees, for pre-judgment interest at the maximum rate allowed by law, post-judgment interest, and for such other and further relief, both at law and in equity, to which she may show herself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Travis Building
405 N. St. Mary's Street, Suite 242
San Antonio, Texas 78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By: */s/ Jeffrey E. Dahl*
**Jeffrey E. Dahl**
**State Bar No. 05310900**
**Attorney for Plaintiff Tammy Lewis**